UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00404-FDW-DSC

AMERICAN FIRST FEDERAL, INC.,          )
                                       )
            Plaintiff,                 )
                                       )
vs.                                    )
                                       )
ZARIA PROPERTIES, LLC, LENRAE          )
WEAVER and HASSAN RADMANESH,           )                    ORDER
                                       )
      Defendants and Third Party       )
Plaintiffs,                            )
                                       )
vs.                                    )
                                       )
NEW DOMINION BANK, INC. and            )
GREGORY GREER,                         )
                                       )
      Third Party Defendants.          )
                                       )

        THIS MATTER is before the Court on several motions by Plaintiff and Third Party

Defendants.  In September 2016, Third Party Defendants filed a Motion for Summary Judgment

as to Third Party Complaint (Doc. No. 29), and Plaintiff filed a Motion for Summary Judgment as

to All Claims and Counterclaims (Doc. No. 32).  After all parties fully briefed the motions, the

Court held a hearing on February 9, 2017.  At the conclusion of the hearing, the Court entered an

oral ruling granting the motions for summary judgment and instructing the parties to file

supplemental briefs or motions regarding an award for attorneys' fees and costs.  Thereafter, Third

Party Defendants filed a Motion for Attorneys' Fees and Costs with a supporting affidavit (Doc.

Nos. 59-60), and Plaintiff filed a Brief on Propriety of an Award of Attorney's Fees with

supporting affidavits (Doc. Nos. 61-63).  These motions are also fully briefed, and the matter is

1

ripe for review. For the reasons that follow, Third Party Defendants' Motion for Summary Judgment (Doc. No. 29) is GRANTED, Plaintiff's Motion for Summary Judgment (Doc. No. 32) is GRANTED, and Third Party Defendants' Motion for Attorneys' Fees and Costs (Doc. No. 59) is DENIED.

## I.  BACKGROUND

In 2005, Defendants Weaver and Radmanesh became interested in purchasing two undeveloped residential lots near Lake Norman (the "Property"). They formed Defendant Zaria Properties, LLC ("Zaria," and together with Weaver and Radmanesh, "Borrowers") for the sole purpose of holding the Property. (Doc. No. 30-2, p. 6; Doc. No. 30-3, p. 14). In 2006, Borrowers executed contracts to purchase the lots for $250,000 and $150,000. (Doc. No. 30-2, p. 25, Doc. No. 30-3, p. 13). Nearly two years later, in 2008, Borrowers pursued and obtained a loan from Third Party Defendant New Dominion Bank ("NDB") to purchase the Property. (Doc. No. 1-1). NDB furnished Borrowers with appraisals ordered by the bank appraising the Property at $270,000 and $170,000. (Doc. No. 30-2, p. 10, Doc. No. 30-3, p. 14).

On August 13, 2008, Zaria executed a Promissory Note (the "Note") that obligated Zaria to pay to NDB the principal amount of $471,750 by August 10, 2010. (Doc. No. 1-1, p. 1). Radmanesh and Weaver each executed a Guaranty of Payment Agreement (the "Guaranties") unconditionally guaranteeing the payment of all amounts due under the Note. (Doc. No. 1-1, p. 18-21). Thereafter, Borrowers executed several successive amended agreements extending the time within which the debt had to be repaid. (Doc. No. 1-1, pp. 3-14).

The Guaranties included a waiver clause in which Radmanesh and Weaver each

> waive[d] all rights of offset and counterclaims against Bank or
> Borrower, all defenses to the enforceability of the[e] Guaranty, all

defenses based on suretyship or impairment of collateral, and rights under NCGS Section 26-7 et seq. or any similar or subsequent laws, and any defenses which the undersigned or the Borrower may assert on the Obligations, including but not limited to, failure of consideration, breach of warranty, theft, statute of frauds, bankruptcy, lack of legal capacity, lender liability, deceptive trade practices accord and satisfaction or usury.

(Doc. No. 1-1, pp. 18, 20).  Likewise, in one amended agreement extending the loan's due date, Zaria agreed to "waive all claims, defenses, setoffs, or counterclaims relating to the [loan], or any document securing the [loan], that [it] may have." (Doc. No. 1-1, p. 14).  In another, Weaver and Radmanesh "unconditionally consent[ed] to the modification [and] acknowledge[d] that the terms and conditions of the [loan] and the Guaranty continue in full force and effect." (Doc. No. 30-3).

Despite having been in the business of owning and managing commercial and residential properties for nearly a decade, (Doc. No. 30-2, pp. 3-7; Doc. No. 30-3, pp. 4-5, 23-25, 28), Borrowers chose not to verify the appraisals ordered by NDB, chose not to order their own appraisals, and chose not to conduct any due diligence regarding the Property's value prior to obtaining the loan.  (Doc. No. 30-2, pp. 10-12; Doc. No. 30-3, pp. 15-18).  They also admit to not reading the loan documents before signing them.  (Doc. No. 30-2, pp. 8, 16-20; Doc. No. 30-3, pp. 7-8, 11, 31-32).

On December 19, 2014, NDB sold its interest in the loan documents to Plaintiff, (Doc. 1-1, p. 15), and Plaintiff demanded payment (Id. at 16).  When Borrowers failed to make payments as required by the loan documents, Plaintiff filed the instant action for breach of contract and breach of personal guaranties, as well as for attorneys' fees and costs.  (Doc. No. 1).

Borrowers raised several affirmative defenses and counterclaims against Plaintiff and filed a third party complaint against NDB and Greer, a senior Vice President at NDB who handled the

loan at issue.  (Doc. No. 13).  Both Plaintiff and Third Party Defendants filed motions for summary

judgment asserting, *inter alia*, that the waiver provisions contained in the loan documents bar all

of Borrowers' defenses, claims, and counterclaims.

## II.  STANDARD OF REVIEW

Summary judgment must be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003).  The

court determines "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The moving party has the burden to show the

court it must prevail because there are no genuine issues of material fact, Celotex Corp. v. Catrett,

477 U.S. 317, 325 (1986), and the non-moving party must then demonstrate the existence of

"evidence from which a jury might return a verdict in his favor."  Anderson, 477 U.S. at 257.  In

making its decision, the Court must view the facts and all inferences drawn from the facts in the

light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587-88 (1986); *see also* Henson v. Jefferson, N.C. App. 204, 200 S.E.2d 812 (1973).

## III.  ANALYSIS

**A.  Borrowers breached their contract and personal guaranties.**

Borrowers do not dispute that they executed the Note and subsequent modifications or that

they failed to pay the amount due under the Note.  Instead, Borrowers contend that the Allonge,

which purports to transfer ownership of the Note from NDB to Plaintiff, is invalid because it

incorrectly names "*First American Federal, Inc.*" as the new noteholder, as opposed to Plaintiff American First Federal, Inc.  (Doc. No. 1-1, Exhibit 5).

Plaintiff has the burden of establishing that it is the holder of the Note or has otherwise acquired the rights of the holder.  First Fed. Bank v. Aldridge, 749 S.E.2d 289, 291 (N.C. Ct. App. 2013).  "Where, as in this case, a negotiable instrument is made payable to order, one becomes a holder of the instrument when it is properly indorsed and delivered to him."  Econo-Travel Motor Hotel Corp. v. Taylor, 271 S.E.2d 54, 57 (N.C. 1980).

Under N.C. Gen. Stat. § 25-3-205(a), an indorsement is specially indorsed if it "is made by the holder of an instrument" and it "identifies a person to whom it makes the instrument payable." "When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person."  Id.  The intent of the signer determines to whom the note is payable, even if the indorser uses the wrong name.  Id. § 25-3-110(a) ("The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not that of the intended person."); see id. § 25-3-205(a) ("The principles stated in G.S. 25-3-110 apply to special indorsements.").[1]

Here, NDB specially indorsed the Allonge by making the instrument payable to an identified person.  Although the Allonge incorrectly names "First American Federal, Inc.," rather than "American First Federal, Inc.," other documents show that NDB, the signer, intended to make the Note payable to Plaintiff.  For example, the Loan Sale Contract under which Plaintiff purchased the debt identifies Plaintiff as the purchaser (Doc. No. 33-1, p. 25, Ex. H) and includes a "Form of

---

[1] The Commentary to the Uniform Commercial Code provides the following illustration: "The drawer intends to pay a person known to the drawer as John Smith.  In fact that person's name is James Smith or John Jones or some other entirely different name.  If the check identifies the payee as John Smith, it is nevertheless payable to the person intended by the drawer."  N.C. Gen. Stat. § 25-3-110 Uniform Commercial Code Comment 1.

Allonge" that uses Plaintiff's correct name (Doc. No. 33-1, p. 42, Ex. H).  The Assignment of Loan and Other Documents further provides that Plaintiff is the assignee of the loan documents.  (Doc. No. 33-1, p. 54-55, Exh. I).  Even in the light most favorable to Borrowers, there is no genuine dispute of material fact that NDB voluntarily delivered the Note and other loan documents to Plaintiff with the intent of transferring them to Plaintiff; therefore, Plaintiff is the holder of the Note.[2]  Because Borrowers do not dispute that they are in default under the terms of the loan documents, Plaintiff is entitled to summary judgment on its claims against Borrowers for breach of contract and guaranties unless Borrowers can establish a valid defense.

**B.  Borrowers expressly waived all defenses, claims, and counterclaims.**

Each of Borrowers' defenses, counterclaims, and claims hinge on certain alleged misrepresentations relating to the loan.  Plaintiff and Third Party Defendants contend that all of Borrowers' defenses, claims, and counterclaims are barred by clear, unambiguous waivers contained in the loan documents.  Borrowers, on the other hand, contend that genuine issues of material fact exist as to the enforceability of the waiver provisions, arguing that the loan documents containing the provisions were gained through inequality of bargaining power.

The North Carolina Supreme Court recently reaffirmed the enforceability of waiver provisions in loan documents.  In Ussery v. BB&T, BB&T made a commercial loan to the plaintiff, and the parties subsequently entered into six loan modification agreements.  777 S.E.2d 272, 274-75 (N.C. 2015).  Each modification agreement contained waiver language similar to the

---

[2] Even if the Note is payable to a fictitious payee, Plaintiff, as possessor of the Note, is still the holder of the Note. N.C. Gen. Stat. § 25-3-404(b) ("If . . . (ii) the person identified as payee of an instrument is a fictitious person, the following rules apply until the instrument is negotiated by special indorsement:  (1) Any person in possession of the instrument is its holder.").

language used in the loan documents at issue here.  <u>Id</u>. at 275.  The North Carolina Supreme Court held that summary judgment in favor of the bank was proper because the waiver language was "clear and unambiguous," it reaffirmed the plaintiff's loan obligations, and it clearly waived any claims and defenses to the plaintiff's indebtedness to the bank.  <u>Id</u>. at 280-82.  The court explained: "Given that parties are generally free to waive various rights, plaintiff accepted the terms of the modification agreements, which benefitted him, in exchange for plaintiff's reaffirmation of his loan obligation and waiver of his offsets and defenses against BB&T."  <u>Id</u>. at 281.  In so holding, the Court recognized the enforceability of waiver provisions in accordance with general principles of contract interpretation.  <u>Id</u>.

Here, as in <u>Ussery</u>, the plain language of the loan documents clearly and unambiguously waives all rights of offsets and counterclaims, all defenses to enforceability, and any defenses Borrowers may assert on the obligations.  Borrowers were free to have made other investment decisions or to have elected not to invest at all in the Property.  Instead, they voluntarily sought credit from NDB to fund their purchase, and in exchange for executing the loan documents, Borrowers received benefits, including receiving loan proceeds as well as multiple extensions of the maturity date of the Note, effectively stalling foreclosure.  The Court has not found any case, and Borrowers have not cited to one, in which a party was found to have been deprived of its free will so as to constitute duress while still receiving benefits under a transaction.

Furthermore, based on the undisputed facts, no reasonable jury could find that Borrowers are the unsophisticated buyers they claim to be or that they were so unequal in bargaining power so as to render the waiver provisions invalid.  For example, this was not Weaver and Radmanesh's first real estate purchase.  By their own admission, they own five or six real estate properties,

including both residential and commercial properties, and Radmanesh has been engaged in purchasing and managing rental property for many years (Doc. No. 30-2, p. 3-7, 11). Likewise, in a sophisticated and calculated decision, Weaver and Radmanesh formed Zaria, a limited liability company, for the sole purpose of purchasing the Property at issue. While Borrowers did not have legal representation in purchasing this Property, Radmanesh admits that this is the first time he purchased property without legal representation. (Id. at 8). In addition, as in Ussery, Borrowers negotiated modifications of the loan documents that favored them by, for example, extending the maturity date of the loan and forestalling foreclosure proceedings in exchange for signing the modifications. The fact that Borrowers chose not to conduct any due diligence regarding the value of the Property and did not read the loan documents prior to signing them does not change the analysis. See Ussery, 777 S.E.2d at 279 ("One who executes a written instrument is ordinarily charged with knowledge of its contents, and he may not base his action on ignorance of the legal effect of its provisions in the absence of considerations such as fraud or mistake.").[3] Accordingly, because Borrowers expressly waived their defenses, claims, and counterclaims, the Court grants summary judgment in favor of both Plaintiff and Third Party Defendants.

## C. Attorneys' Fees and Costs

### 1. Plaintiff

In addition to the recovery of the outstanding indebtedness, Plaintiff also seeks attorneys' fees and costs in the amount of $64,563.75 pursuant to N.C. Gen. Stat. §§ 6-21.2 and 75-16.1.

---

[3] In both their written brief and oral argument, Borrowers argued that NDB and Greer's alleged statements, when viewed collectively, constituted fraud; however, Third Party Defendants did not owe Borrowers a fiduciary duty or a duty to disclose financial information regarding the Property or developer, and Borrowers elected not to conduct any due diligence. Borrowers have failed to create a genuine issue of material fact to establish that any statements of Third Party Defendants amounted to fraud.

Under North Carolina law, a party generally cannot recover attorney's fees "unless such a recovery is expressly authorized by statute." Stillwell Enters., Inc. v. Interstate Equip. Co., 266 S.E.2d 812, 814 (N.C. 1980). Section 6-21.2 authorizes the awarding of attorneys' fees and costs in actions to enforce obligations owed under a promissory note or other "evidence of indebtedness" that provides for the payment of attorneys' fees. N.C. Gen. Stat. § 6-21.2. To be entitled to attorneys' fees under this section, the holder of the note must notify all parties sought to be held on the obligation that the creditor will seek to enforce the attorneys' fees provision contained in the note and that if the party pays the outstanding balance within five days from the mailing of such notice, then the attorneys' fee obligation shall be void. Id. § 6-21.2(5). The statute further provides that when the note or other evidence of indebtedness provides for the payment of reasonable attorneys' fees without "specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the 'outstanding balance' owing on said note." Id. § 6-21.2(2).

Here, both the Note and the Guaranties contain express language authorizing the collection of all costs of collection, including attorneys' fees, in the event that an attorney is hired to collect the debt. (Doc. No. 31-1, Ex. A-C). Upon default by Borrowers under the terms of the Note, Plaintiff, through counsel, sent to Borrowers letters dated August 21, 2015, demanding payment in full and advising Borrowers that if payment was not made within five days, Plaintiff would be entitled to collect its attorneys' fees up to fifteen percent (15%) of the total due. (Doc. No. 1-6). Borrowers received the letters, (Doc. No. 2, p. 3, ¶ 19), and they failed to pay as required. Plaintiff is, therefore, entitled to its reasonable attorney's fees and costs under N.C. Gen .Stat. § 6-21.2.

Since the Note and Guaranties do not specify an amount of fees to be awarded, Plaintiff is entitled to recover fees in an amount equal to fifteen percent of the outstanding balance of the

Note. N.C. Gen. Stat. § 6-21.2(2). Plaintiff, however, seeks only $64,563.75 in attorneys' fees and costs, which is less than fifteen percent of $455,686.22, the total amount due under the Note. Considering that the North Carolina statute "has predetermined that 15% is a reasonable amount," RC Assocs. v. Regency Ventures, Inc., 432 S.E.2d 394, 397 (1993), an amount less than that is also reasonable. See Telerent Leasing Corp. v. Boaziz, 686 S.E.2d 520, 524 (N.C. Ct. App. 2009) (holding the trial court did not err in awarding attorneys' fees that were "well below the statutory ceiling of fifteen percent"); Bombardier Capital, Inc. v. Lake Hickory Watercraft, Inc., 632 S.E.2d 192, 197 (N.C. Ct. App. 2006) (citation omitted) (affirming the trial court's award of attorney fees when "the trial court granted attorney fees in an amount less than fifteen percent of the $165,000 award"). The affidavits of Plaintiff's attorney and Vice President, as well as the billing statements that show the actual work performed and the attorneys' hourly rates, support the award of $64,563.75 in reasonable attorneys' fees and costs.

Contrary to Borrowers' argument, Plaintiff was not required to allocate its fees incurred as a result of its work on its breach of contract claim versus defending against Borrowers' counterclaims because the counterclaims were raised in defense of Plaintiff's contract claims, making them reasonably related. See Telerent Leasing Corp., 868 S.E.2d at 524 ("[W]hen other actions are reasonably related to the collection of the underlying note sued upon, attorneys' fees incurred therein may properly be awarded under G.S. 6–21.2[.]" (citation omitted)). Moreover, the fact that the invoices and billing statements from Plaintiff's attorneys are billed to "First Commerce, LLC," as opposed to Plaintiff, is not fatal to Plaintiff's recovery of fees. It is obvious from a brief scan of the affidavits and invoices attached to Plaintiff's brief that the invoices represent the legal fees and costs incurred by Plaintiff. For example, the affidavit of Plaintiff's

Vice President states that "Plaintiff was initially represented in this matter by Henderson, Nystrom, Fletcher & Tydings, PLLC and attorney John Fletcher, through September 2015. Thereafter, Plaintiff was represented by Smith Debnam, and attorney John Sperati." (Doc. No. 63, pp. 3-4). Likewise, Sperati's affidavit explains that "Plaintiff has incurred $5,098.00 in attorneys' fees and costs for services provided by my firm." (Doc. No. 62, p. 3). Therefore, for the reasons explained above, the Court awards Plaintiff $64,563.75 in reasonable attorneys' fees and costs under N.C. Gen. Stat. § 6-21.2.

Plaintiff also seeks attorneys' fees and costs under N.C. Gen. Stat. § 75-16.1. Section 75-16.1(2) provides that in any suit alleging an unfair or deceptive trade practices violation under Chapter 75, the Court may award reasonable attorneys' fees to the prevailing party if "[t]he party instituting the action knew, or should have known, the action was frivolous and malicious." N.C. Gen. Stat. § 75-16.1. "A claim is frivolous if a proponent can present no rational argument based upon the evidence or law in support of [it]. A claim is malicious if it is wrongful and done intentionally without just cause or excuse or as a result of ill will." McKinnon v. CV Indus., Inc., 745 S.E.2d 343, 350 (N.C. Ct. App. 2013) (citations and quotation marks omitted). "Award or denial of such fees . . . is within the discretion of the trial judge." Lincoln v. Bueche, 601 S.E.2d 237, 244 (N.C. Ct. App. 2004).

Plaintiff argues that Borrowers knew or should have known their action was frivolous and malicious because there was no rational basis in law or fact supporting their Chapter 75 counterclaim, the counterclaim was based upon the alleged acts/omissions of a non-litigant, and they failed to withdraw their counterclaim after discovery failed to produce evidence to support the claim. The fact that Borrowers' unfair and deceptive trade practices claim was legally

11

insufficient, however, does not render it frivolous and malicious. <u>See</u> <u>Basnight v. Diamond Developers, Inc.</u>, 178 F. Supp. 2d 589, 593 (M.D.N.C. 2001). In fact, the Court did not even address the merits of Borrowers' unfair and deceptive trade practices claim because it concluded Borrowers had waived all claims and defenses. Although the Court disagreed with Borrowers' legal arguments and reasoning, the Court is not willing to state that their unfair and deceptive trade practices counterclaim against Plaintiff was both frivolous and malicious. Accordingly, Plaintiff is not entitled to attorneys' fees under N.C. Gen. Stat. § 75-16.1.

### 2. Third Party Defendants

Third Party Defendants seek attorneys' fees and costs in the amount of $85,067.13 pursuant to N.C. Gen. Stat. § 75-16.1(2) for its defense of Borrowers' Chapter 75 claim. Third Party Defendants argue that Borrowers should have known their action was frivolous and malicious because Borrowers cited to cases indicating their claims would fail as a matter of law and because they alleged conclusory facts in the face of sworn evidence to the contrary. (Doc. No. 59). As explained above, however, the fact that Borrowers' unfair and deceptive trade practices claim was legally insufficient does not render it frivolous and malicious, <u>see</u> <u>Basnight</u>, 178 F. Supp. 2d at 593, especially in light of the fact that the Court did not address the merits of Borrowers' Chapter 75 claim. Although the Court disagreed with Borrowers' legal arguments and reasoning, the Court is not willing to state that their unfair and deceptive trade practices claim against Third Party Defendants was frivolous and malicious. Accordingly, Third Party Defendants' Motion for Attorneys' Fees and Costs is denied.

## IV.  CONCLUSION

IT IS, THEREFORE, ORDERED that:

1.  Third Party Defendants' Motion for Summary Judgment (Doc. No. 29) is GRANTED;

2.  Plaintiff's Motion for Summary Judgment (Doc. No. 32) is GRANTED.  For the reasons stated above, Plaintiff is entitled to reasonable attorneys' fees and costs in the amount of $64,563.75; and

3.  Third Party Defendants' Motion for Attorneys' Fees and Costs (Doc. No. 59) is DENIED.

IT IS SO ORDERED.

Signed: June 19, 2017

Frank D. Whitney
Chief United States District Judge